Pennsylvania Prevailing Wage Appeals Board, Commonwealth of Pennsylvania v. Steve Black, Inc., Appellant.

Argued June 10, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR. and BLATT, sitting as a panel of three.

*Norman I. White*, with him *C. Grainger Bowman* and *McNees, Wallace & Nurick,* for appellant.

*David A. Ody,* Assistant Attorney General, for appellee.

OPINION BY JUDGE BLATT, November 5, 1976:

Steve Black, Inc. (appellant) appeals from an order of the Pennsylvania Prevailing Wage Appeals Board (Board), dated March 12, 1976, which affirmed a decision of the Secretary of Labor and Industry (Secretary), dated November 26, 1975. The Secretary's decision held that the appellant had intentionally violated Section 5 of the Pennsylvania Prevailing Wage Act[1] (Act), 43 P.S. §165-5.

The appellant, a mechanical contractor having its principal place of business at R. D. No. 1, Carlisle, Pennsylvania, had contracts to do the plumbing, heating, ventilation, and air-conditioning (HVAC) work at the Central Senior High School in York, the plumbing and heating work at the Big Spring Middle School in Newville, and the pipelaying work at the New Junior High School in the Central Dauphin School District.

On June 4, 1974, a field inspector for the Prevailing Wage Division of the Department of Labor and Industry (Department) conducted a "routine checkup" at the Big Spring project and learned that several of the appellant's plumbers employed there were not receiving the prevailing minimum wage. This finding was followed by audits of the appellant's payroll records which indicated that not only had it failed to pay the prevailing minimum wage on the Big Spring

---

[1] This Section of the Act of August 15, 1961, P.L. 987, 43 P.S. §165-1 et seq., requires contractors on public works to pay their workmen a minimum wage rate which is predetermined by the Secretary.

project, but that it had also underpaid its workmen on the Central Senior High School and the New Junior High School projects. Hearings were held on April 7, 1975 and August 4, 1975, after which the Secretary found the appellant guilty of intentionally violating Section 5 of the Act, 43 P.S. §165-5, and ordered it to pay the aggrieved employes a total of $2,428.12 in back wages.[2] The Secretary also ordered the General Counsel of the Department to notify all public bodies that no contract could be awarded to the appellant for a period of three years from the date of notice, such action being required whenever the Secretary finds that a contractor has intentionally violated the Act. Section 11(e) of the Act, 43 P.S. §165-11(e). The Board affirmed the Secretary's decision and the appellant then appealed to this Court, reasserting three contentions: (1) that this proceeding should be dismissed because it was brought pursuant to Department regulations which had not been properly promulgated in accordance with the requirements of the Commonwealth Documents Law[3] (Law); (2) that this proceeding should be dismissed because the Secretary does not have the authority to institute independently any such investigations as were instituted here; and (3) that the record does not support the findings of the Secretary (as recommended by the Hearing Examiner and as affirmed by the Board) that the appel-

---

[2] The Board noted that, although the original amount in dispute was $10,202.03, the hearing examiner did not see fit to enforce collection of that amount apparently because the Prevailing Wage Regulations pursuant to the proof of this claim were not published until May 24, 1975.

[3] The Act of July 31, 1968, P.L. 769, as amended, 45 P.S. §1101 et seq. Section 402(1) of the Law, 45 P.S. §1402(1) provides that any department regulation not promulgated in accordance with the provisions of Section 402 by the effective date of this act, July 1, 1969, shall be invalid.

lant corporation was guilty of an intentional failure to pay its workmen the prevailing wage rates.

Section 44 of the Administrative Agency Law,[4] 71 P.S. §1710.44, limits our scope of review to determining whether or not the "Findings of Facts" are supported by substantial evidence, whether or not an error of law was committed, or whether or not the appellant's constitutional rights were violated. *Williams v. Civil Service Commission,* 457 Pa. 470, 327 A.2d 70 (1974); *General Electric Corp. v. Human Relations Commission,* 18 Pa. Commonwealth Ct. 316, 334 A.2d 817 (1975).

In making its assertion that this proceeding should be dismissed because it was formally brought pursuant to improperly promulgated Department regulations, the appellant relies on our recent decision in *Burlington Homes, Inc. v. Kassab,* 17 Pa. Commonwealth Ct. 329, 332 A.2d 575 (1975). This reliance, however, is misplaced. In *Burlington Homes, supra,* we held that an administrative regulation, which banned the primary movement of fourteen-foot wide mobile homes on State highways after February 28, 1974, was invalid because it had not been promulgated pursuant to the requirements of the Commonwealth Documents Law, and that, therefore, the Pennsylvania Department of Transportation had *no grounds upon which to base* its rejection of applications for special hauling permits. *See also Newport Homes, Inc. v. Kassab,* 17 Pa. Commonwealth Ct. 317, 332 A.2d 568 (1975). In the present case, however, the Department proceeded strictly in accordance with and pursuant to statutory provisions and, therefore, there being no Department regulations relied upon here, *Burlington Homes, supra,* is not controlling.

---

[4] Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.1 et seq.

The appellant alternatively urges us to dismiss this proceeding because the Secretary, the Prevailing Wage Bureau and the Board were all without jurisdiction to proceed against the appellant. This, it argues, is because the Secretary does not possess the authority to conduct independent investigations. Although it is true that the Act does not expressly grant such power to the Secretary,[5] we believe that the broad authority found in Section 2203 of The Administrative Code of 1929[6] (Code), 71 P.S. §563, is sufficient. It provides that: ''The Department of Labor and Industry shall have the power to make investigations and surveys upon *any subject within the jurisdiction of the department, either upon its own initiative* or upon the request of the Industrial Board.'' (Emphasis added.) We believe, therefore, that the Secretary is empowered to supervise compliance with the Act by authorizing field inspectors to make ''routine checkups'' at job sites and to audit payroll records independently to determine whether or not a contractor has failed to pay the minimum wage rates.[7] Such authority is necessary to prevent contractors from frustrating the purpose of the Act (which is to insure that all workmen on public works receive a minimum wage rate) by coercing their employes to

---

[5] Section 11(c) of the Act, 43 P.S. §165-11(c), makes it the Secretary's *duty* to conduct an investigation to determine whether or not there has been a failure to pay the prevailing wages only upon notification to that effect by the financial or fiscal officer of the public body involved in the project or upon the filing of a timely protest by a workman.

[6] Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §51 et seq.

[7] In a letter to the Secretary dated September 4, 1964 from the then Attorney General, Walter E. Alessandroni, the opinion was given that the Secretary may proceed in the absence of a complaint filed by a workman to enforce the payment of prevailing wages where an inspection of a contractor's payroll records indicate an underpayment of wages.

accept less than the prevailing minimum wage in exchange for a guarantee of continued employment.

The appellant, argues, however, that this commingling of prosecutorial and adjudicative functions in the Secretary violates due process because it prevents that officer from impartially viewing the record to determine whether or not a violation has occurred. We addressed a similar contention in *Rayne v. Edgewood School District,* 19 Pa. Commonwealth Ct. 353, 339 A.2d 151 (1975). In that case, a board had conducted an investigation, prepared charges, and made a preliminary determination of "guilt" prior to granting a hearing. We held there that although there may be some cases which demonstrate a bias or appearance of bias indicative of a violation of due process, such an administrative procedure as that involved here is not *per se* constitutionally impermissible. *See Withrow v. Larkin,* 421 U.S. 35 (1975); *Barr v. Pine Township Board of Supervisors,* 20 Pa. Commonwealth Ct. 255, 341 A.2d 581 (1975); *See also* 2 Davis, *Administrative Law Treatise* §13.02 (1958). We find *Rayne, supra,* to be dispositive of the issue raised here and, therefore, having found no bias or appearance of bias in the proceedings below, we must conclude that the appellant's due process rights were not violated.

The final issue presented in this case is whether or not there was substantial evidence to support the finding of the Secretary that the appellant corporation was guilty of an intentional failure to pay prevailing wage rates.[8] The appellant does not now con-

---

[8] *See* Section 11(h)(1) of the Act, 43 P.S. §165-11(h)(1) which provides, in pertinent part, as follows:

"(h) The following shall constitute substantial evidence of intentional failure to pay prevailing wage rates:

"(1) Any acts of omission or commission done wilfully or with a knowing disregard of the rights of workmen resulting in the payment of less than the prevailing wage rates."

test that it failed to pay prevailing wage rates at the three construction projects, and it has in fact complied with that part of the Secretary's order which requires supplemental payments to individuals who received less than the required rates. What the appellant does dispute is the finding that its failure to pay the required rates was intentional, and it reasserts the contention raised below that any underpayments were the result of reasonable misunderstandings on its part concerning the applicability of the Act. The appellant attempts to assert a separate justification for each individual violation which resulted in the payment of less than the prevailing wage rates. We will discuss each purported excuse separately.

The appellant explains that it did not pay the prevailing wage rate to its journeymen plumbers on the Big Spring School project because it felt that the Act did not apply to contracts on public works where the contract price was less than $25,000.[9] In justification of this interpretation, the president of the appellant corporation testified that a Department employe had informed the appellant's bookkeeper that the Act only applied to contracts in excess of $25,000 and that he had relied on this information in submitting the bid for the plumbing work. He also testified that he had relied on the regulations found in 4 Pa. Code §63.172 which then provided that "[t]he provisions of the [Act] are not applicable to contracts costing less than $25,000."[10] The Hearing Examiner correctly pointed out that the "regulation" cited by the appellant had been promulgated by the Department of Property and Supplies and, therefore, was not an

---

[9] The appellant's plumbing contract price for the Big Spring project was $22,731.

[10] 4 Pa. Code §63.172 has since been replaced by 4 Pa. Code §63.201 which simply states that "the contract is subject to the provisions, duties, obligations, remedies and penalties of the [Act]."

authoritative interpretation of the dollar threshold requirement of the Act. Moreover, a fair reading of the Act indicates that its provisions shall apply to all contracts involved in a public works project where the estimated total cost of the *entire* project exceeds $25,-000. *See* Section 2(5) of the Act, 43 P.S. §165-2(5). The estimated total cost of the Big Spring School project was $450,000, and, therefore, the appellant's plumbing contract was clearly within the purview of the Act.

The Hearing Examiner did not find the appellant's testimony to be credible[11] and concluded that the appellant's failure to pay the prevailing wage rate evidenced an intent to violate the requirements of the Act. And our review of the record discloses sufficient evidence to substantiate this conclusion. The specifications for the Big Spring School project put the appellant on notice that the prevailing minimum wage provisions would apply to *all* contracts on the project and the predetermined rate for plumbers was included therein. In addition, the appellant submitted weekly wage certificates for the project which certified that *all* workmen employed by it had been paid their wages *in full and that it had complied with all provisions of the Act.* It is, of course, also of considerable significance to the final determination of an intentional violation that the appellant was unable to present a credible justification for underpayment of wage rates.

We, therefore, must affirm the Board's decision with respect to the intentional failure to pay the prevailing minimum wage rate at Big Spring School project and, there being no discretion as to the penalty provided in Section 11(e) of the Act, the Secretary's

---

[11] We, of course, accept the Hearing Examiner's determination of credibility. *See Mine Safety Appliance Co. v. Roy*, 7 Pa. Commonwealth Ct. 576, 300 A.2d 839 (1973).

order that no contract shall be awarded to the appellant for a period of three years must also be affirmed.[12] *See Dale D. Akins, Inc. v. Department of Labor and Industry*, 16 Pa. Commonwealth Ct. 191, 329 A.2d 869 (1974).

In regard to both the Central Senior High School project and the New Junior High School project, the Hearing Examiner also found that the appellant had employed apprentices in excess of its approved apprentice-to-journeyman ratio.[13] The appellant asserts that it had interpreted the apprentice-to-journeyman ratio to apply only on a shop-wide basis and not also on a job-site basis.[14] The Secretary held that, in the light of the appellant's experience in the construc-

---

[12] Although it is therefore unnecessary to determine whether or not substantial evidence exists to support the finding that the appellant had intentionally paid its workmen less than the required wage rates on the New Junior High School project and the Central Senior High School project, we will include a determination of these issues because we believe that the existence of separate violations of the Act on several projects lends support to the conclusion that the appellant was intentionally attempting to circumvent the provisions of the Act. We also note that the violations on the Big Spring School project presented the closest question of whether or not the appellant's violation was intentional.

[13] The appellant had an approved apprenticeship program with the Pennsylvania Apprenticeship and Training Council (PATC) which enabled it to employ one apprentice for the first, second and third journeymen regularly employed and two apprentices for the fourth, fifth and sixth journeymen regularly employed, and so on in units of three journeymen regularly employed. The Hearing Examiner's "Findings of Facts" indicate that on the Central High project and the New Junior High project, the appellant constantly employed more than the allowed number of apprentices.

[14] A shop-wide ratio determines the number of apprentices a sponsor can employ in a particular craft (*e.g.*, plumbers, bricklayers, carpenters, etc.). A job-site ratio refers to the number of apprentices which a sponsor can employ at a particular job site in conjunction with its journeymen regularly employed at that job site. The purpose of the job-site ratio seems to be to insure that apprentices re-

tion industry, its interpretation was unreasonable and its excessive use of apprentices itself evidenced a knowing disregard of its workmen's rights resulting in an underpayment of wages. We agree with this conclusion and accordingly must also affirm the Board's decision in this regard.

Finally, the Hearing Examiner found that the appellant had underpaid its plumbers employed at the New Junior High School project. The appellant attempted to justify this underpayment of wages by explaining that pipe laid beyond five feet of the walls of a building is laborer's work; that the workmen in question, although classified as plumbers on the payroll records, were doing pipelaying work outside the five-foot perimeter; that a laborer's wage is less than a plumber's wage; and that, therefore, the appellant could pay its plumbers less than the plumbers' prevailing minimum wage rate. The Hearing Examiner held that the appellant did not adduce competent evidence which demonstrated that pipelaying done five feet beyond the outer walls of a building was within the special province of those workers classified as laborers and had not in fact shown that his plumbers had actually done such work at the New Junior High School. In light of the appellant's inability to justify the underpayments and in view of the overall context of this case, we again must affirm the Board's decision that the underpayments involved on the New Junior High School were intentional. We, therefore, affirm the decision of the Pennsylvania Prevailing

ceive proper training and to prevent the excessive use of apprentices at the expense of journeymen underemployment, and this underemployment constitutes the violation. As the Hearing Examiner correctly pointed out in his decision, "[s]ince apprentices are paid less than journeymen, an excessive use of apprentices results in a clever means to pay less than the prevailing wage rates to journeymen."

Wage Appeals Board and dismiss the appeal of Steve Black, Inc.

### ORDER

AND NOW, this 5th day of November, 1976, the appeal of Steve Black, Inc. is dismissed and the decision of the Pennsylvania Prevailing Wage Appeals Board is hereby affirmed.