598 A.2d 1065

**HENKELS & McCOY, INC., Petitioner,**

**v.**

**DEPARTMENT OF LABOR AND INDUSTRY, PREVAILING WAGE APPEALS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1991.

Decided Oct. 25, 1991.

R. Michael Carr, for petitioner.

John T. Kupchinsky, Deputy Chief Counsel, for respondent.

Before COLINS and SMITH, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Before this Court is the appeal of Henkels & McCoy, Inc. (Petitioner) from a January 14, 1991 decision of the Prevailing Wage Appeals Board (Board) which affirmed the decision of the Secretary of Labor and Industry (Secretary) which determined that Petitioner unintentionally violated the Pennsylvania Prevailing Wage Act (Act), Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165–1—165–17, by failing to pay prevailing wages in the amount of $35,-425.50. The Board's decision is affirmed.

On October 28, 1985, the Commonwealth of Pennsylvania issued Petitioner a purchase order covering the sale and installation of replacement telephone equipment for the

Department of Public Works, Embreeville Mental Retardation Center, Chester, Pennsylvania. This equipment was installed by Petitioner as received from the manufacturer without alterations. Petitioner employed telephone installers who were paid wages and various fringe benefits in accordance with the collective bargaining agreement covering telephone installers. Petitioner employed no electricians in the project. The tools used by the installers included screw drivers, hilti guns and a bucket truck. The conduit installed included EMT, a type of heavy conduit which is joined with couplings. In his decision, the Secretary held that these duties and tools are properly classified as those of an electrician. Consequently, the Secretary issued an order to show cause asserting that Petitioner unintentionally violated Section 5 of the Act, 43 P.S. § 165–5 of the Act by not paying its workers on a public work project at the pay rate established for electricians (as opposed to telephone installers).[1] Petitioner appealed to the Board and the Board affirmed the Secretary's determination. The matter is now before this Court.[2] The issues before this Court are whether the installation of the replacement telephone system constituted a "public work" within the meaning of the Act; whether the workmen assigned to the public work job project were properly classified as electricians; and whether the Secretary failed to give proper credit for fringe benefits paid by Petitioner to its employees.

Petitioner argues that the Act covers "public work" which is defined in Section 2 of the Act as "construction, reconstruction, demolition, alteration and/or repair work"

1. Initially, the Secretary calculated the underpayment to be $40,156.94 for the work performed. However, in his final decision and order, the Secretary reduced the claimed underpayment of wages to $35,-425.50 because of miscalculation.

2. This Court's scope of review of an appeal from a decision of the Prevailing Wage Appeals Board is limited to a determination of whether there is substantial evidence to support the Board's findings, whether an error of law was committed or whether any constitutional rights were violated. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

on projects costing in excess of $25,000. The contract in this matter involved the sale and installation of telephone equipment. Petitioner asserts that since no construction, reconstruction, demolition, alteration or repair work was involved the Act does not apply to this contract. Rather, Petitioner asserts that the purchase order primarily covered the *sale* of telephone equipment with the cost representing approximately 60% of the contract price.[3] Petitioner asserts that the installation of the equipment was ancillary to the sale of the equipment itself and that since the project involved replacement of an existing telephone system, the tunnels, conduit and telephone poles already in place were utilized in the installation of the new equipment. Petitioner asserts that since they installed telephone equipment as purchased from the manufacturer it cannot be reasonably maintained that the Petitioner "constructed, reconstructed, demolished, altered or repaired" such equipment. Further, Petitioner asserts that since installation of the equipment was performed using existing tunnels, conduit and telephone poles, it cannot be reasonably maintained that Petitioner constructed, reconstructed, altered or repaired the Embreeville Center. Accordingly, Petitioner argues that the labor component of the contract is insufficient to qualify the contract as a "public work" within the meaning of the Act.

The Secretary argues that by the terms of the contract itself and as acknowledged by Petitioner in its brief, the contract called for labor. The Secretary asserts that there is no support in law or fact for Petitioner's contention that a threshold must be crossed before the amount of labor involved in a public contract brings that project within the ambit of the Act.

The Secretary, asserting that Petitioner failed to pay its employees on the project the wage rate applicable to electricians, argues that Petitioner's employees performed electri-

3. Vice-president of Henkels & McCoy testified that approximately $140,000 of the $248,850 contract price represented equipment cost to Petitioner. N.T., p. 56.

cians' duties such as ripping out old conduit and cable, putting in new cables and finished conduit, hanging wire mold and terminating cables. Secretary's decision, Findings of Fact Nos. 6–7, 13.

We believe this matter is directly governed by *Kulzer Roofing, Inc. v. Department of Labor and Industry*, 68 Pa.Commonwealth Ct. 642, 450 A.2d 259 (1982). In *Kulzer*, this Court held that the Act required minimum wages were to be paid for repair work done to existing "facilities" and that the word "facilities" not only referred to the entire structure but also to its component parts. As applicable to the matter sub judice, a telephone system is clearly a component of the whole. Further, labor was, indeed, supplied by Petitioner for the installation of the equipment. Therefore, the installation of a replacement telephone system utilizing existing tunnels, conduit and telephone poles does constitute a public work and is subject to the prevailing minimum wage provisions of the Act. *Kulzer*.

■ Petitioner next argues that it was not required to employ electricians on the project. Petitioner's entire argument consists of the assertion that the evidence in this case is that Petitioner employed telephone installers not electricians and the telephone installers were paid the rate applicable to that classification in accordance with the terms of the local labor agreement. Further, Petitioner asserts that the evidence is undisputed that telephone installers are not electricians because electricians work with much higher voltage than telephone installers and telephone installers are never exposed to dangerous voltages. Finally, Petitioner draws a distinction between electricians and telephone installers in that the former serve a four or five year formal apprenticeship while the latter receive only on the job training.

■ The Secretary argues that 34 Pa.Code § 9.103(9) provides that "[a] workman using the tools of a craft who does not qualify as an apprentice within this subsection shall be paid the rate predetermined for journeymen in that particular craft or classification." Therefore, the Secretary

asserts that a workman is to be classified and paid according to the work that he or she actually performs on a project in accordance with the trade custom and usage. When a court is reviewing an agency's adjudication under that agency's regulations, the agency interpretation is controlling unless (1) that interpretation is erroneous or inconsistent with the regulation or (2) the regulation is inconsistent with the statute under which it was promulgated. *Medrow v. Department of Transportation*, 120 Pa.Commonwealth Ct. 306, 548 A.2d 393 (1988). Sections 9.102 and 9.103(9) of 34 Pa.Code are designed to insure that workers are paid the prevailing wage rate for work they perform on public work projects. In the matter sub judice, the Secretary found that the workers performed electricians' duties and used electricians' tools. Secretary's decision, Findings of Fact Nos. 5–8, 12–13.[4] Examination of the entire record, and the Prevailing Wage Regulations set forth in 34 Pa. Code §§ 9.101–9.112, and the precedence set forth in *Medrow*, lead us to the conclusion that the Secretary properly classified the workers in question as electricians.

█ Petitioner's final argument is that, if it is determined that the Act applied to the work project and Petitioner was

**4.** Findings of Fact Nos. 5–8, 12–13 are as follows:

5. Mr. Hess' position with [Petitioner] was that of a journeyman telephone installer/technician. In this position, he shared tools and work duties with journeymen elecricians.

6. Mr. Hess' duties on this project included ripping out old conduit and old cable and putting in new cables and finished conduit. He also hung wire mold and terminated cables. Tools used included screw drivers, hilti guns and a bucket truck.

7. The workers on the Project, as listed on the Summary Sheet, Order to Show Cause, Exhibit "B" performed the same work as Mr. Hess with the same tools, although not everyone worked on the conduit.

8. An old telephone system and tunnels had existed at the Hospital and a new cable was placed on existing poles. The type of conduit used was EMT, the majority of which was placed in existing runs. It was heavy and put together with couplings.

. . . .

12. The tools used by the workers on this Project are tools used in the electrician's trade.

13. The type of duties performed by the workers on this Project are properly classified as electrician's work. (Citations omitted.)

required to pay electricians' rates on the project, then the Secretary failed to consider the value of fringe benefits paid by Petitioner pursuant to the terms of the local labor agreement. Articles V through XII of the Agreement between Petitioner and Local Union 1448 of the International Brotherhood of Electrical Workers provide for a series of fringe benefits including paid holidays, personal days, vacation pay, sick time and insurance. These fringe benefits had a dollar value of $3.88 per hour and were paid to the employees working on the project.

The Secretary argues that he allowed credit only for the fringe benefit payments recognized in the Prevailing Minimum Wage Predetermination for building (Predetermination) set forth by the Department of Labor and Industry up to the maximum amount of the predetermined fringe benefit rates in each fringe benefit category. *See* Final Determination of the Secretary, p. 9.

■ Section 7 of the Act requires the Secretary to include fringe benefits as part of the wage rate. However, there is no specific provision which addresses credit allowances for payment of the predetermined fringe benefit categories. Based upon prior secretary decisions, the Secretary in this instance has determined that fringe benefit credits are only recognized in the Predetermination up to the maximum amount of the predetermined fringe benefits rate. Any fringe benefits paid in a specific category over and above the maximum amount listed in the Predetermination is only done so at the discretion of the employer. Consequently, credit transfers from contributions exceeding the prescribed fringe benefit rate to offset deficiencies in other fringe benefit categories are not permitted. *See Department of Labor and Industry, Prevailing Wage Division v. Francesco Scrivofilo t/d/b/a Franco Electric Co.,* Final Determination of the Secretary, December 1, 1988, pp. 9–10. Where the court reviews a statutory interpretation by the agency charged with that statute's execution and application, the administrative interpretation is entitled to great weight and should not be disregarded or overturned unless

there are cogent reasons for so doing and only if that interpretation is clearly erroneous. *Pennsylvania Liquor Control Board v. Burrell Food Systems, Inc.*, 97 Pa.Commonwealth Ct. 101, 508 A.2d 1308 (1986). We see nothing erroneous in the Secretary's interpretation or decision. Consequently, this Court will not disregard the Secretary's administrative interpretation in the matter presently before this Court.

For the foregoing reasons, the final decision and order of the Board is hereby affirmed.

SMITH, J., dissents.

## ORDER

AND NOW, this 25th day of October, 1991, the final decision and order of the Prevailing Wage Appeals Board in the above-captioned matter is affirmed.