Remanded with directives. Panel jurisdiction retained.

PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, City of Harrisburg, and Harrisburg Redevelopment Authority, Petitioners,

v.

DEPARTMENT OF LABOR AND INDUSTRY, PREVAILING WAGE APPEALS BOARD, Respondent.

DEPARTMENT OF LABOR AND INDUSTRY, PREVAILING WAGE DIVISION, Petitioner,

v.

PENNSYLVANIA PREVAILING WAGE APPEALS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 7, 1995.

Decided Nov. 22, 1995.

---

**4.** Upon remand, the trial court should direct appellant to file a statement of matters complained of on appeal pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A. Upon receipt of the statement, the trial court shall issue an opinion in accordance with Pa.R.A.P., Rule 1925(a), 42 Pa. C.S.A.

Eric N. Athey, for petitioners Pennsylvania National Mutual Casualty Insurance Company, City of Harrisburg, and Harrisburg Redevelopment Authority.

Richard C. Lengler, Assistant Counsel, and Jance C. Shinko, for petitioner Department of Labor and Industry, Prevailing Wage Division.

Frayda Kamber, Deputy Chief Counsel, for respondent.

Before SMITH and FRIEDMAN, JJ., and KELTON, Senior Judge.

FRIEDMAN, Judge.

Petitioners, Pennsylvania National Mutual Casualty Insurance Company (PNI), the City of Harrisburg (City) and the Harrisburg Redevelopment Authority (HRA), seek review of a determination by the Pennsylvania Prevailing Wage Appeals Board (Board) that the Pennsylvania Prevailing Wage Act (Act)[1] applies to an asbestos removal contract between the City and CMC Environmental Hazard, Inc. (CMC). We affirm.

PNI, the City and HRA entered into a "development agreement" to assist PNI in the building of a new headquarters facility in Harrisburg. This project contemplated the acquisition of properties on Market and North Second Streets, the demolition of the existing structures, and the construction of office towers and a parking garage. The buildings and land on the project site were to be acquired by the City or HRA. Section 8.3 of the development agreement required the City, "at PNI's expense," to remove all asbestos from and demolish several buildings located on the project site. The property would later be conveyed to PNI or its wholly owned subsidiary, Penn National Realty Trust (PNRT).

In accordance with the development agreement, the City entered into an asbestos removal contract with CMC at a cost of $109,-000.00, ninety percent to be paid when the work was completed, and the remaining ten percent to be paid upon receiving approval

---

1. Act of August 15, 1961, P.L. 987, *as amended,*   43 P.S. §§ 165-1—165-17.

from the Department of Environmental Resources for the work performed.[2]

Section 5 of the Act, 43 P.S. § 165–5 (emphasis added), provides as follows:

Not less than the prevailing minimum wages as determined hereunder shall be paid to all workmen employed on *public work.*

Section 2 of the Act, 43 P.S. § 165–2 (emphasis added), defines "public work" as:

construction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract and *paid for in whole or in part out of the funds of a public body* where the estimated cost of the total project is in excess of twenty-five thousand dollars ($25,000), but shall not include work performed under a rehabilitation or manpower training program.

On September 9, 1994, the Prevailing Wage Division (Division) concluded that no part of the project was subject to the Act and, therefore, the laborers under this contract did not have to be paid the prevailing minimum wage. Among other things, the Division relied on the fact that any asbestos removal and demolition, although contracted for by the City, would ultimately be paid for by PNI.

To protest the Division's determination, the Pennsylvania State Building and Construction Trades Council, the AFL–CIO, and the Central Pennsylvania Building Trades Council (collectively, "trades councils"), all of whom represent employees in the building and construction industries, filed a grievance with the Board under section 2.2(e) of the Act, 43 P.S. § 165–2.2(e). Initially, Petitioners contested the trades councils' standing to protest the Division's determination. The Board, however, disagreed with Petitioners' contention and considered the merits of the trades councils' grievance, concluding that the project was indeed a "public work" subject to the Act. According to the Board, the fact that PNI was to forward funds to the City to pay for the asbestos removal was immaterial because the City had nonetheless contractually obligated itself to pay for the services performed and, therefore, the services were "paid for in whole or in part out of the funds of a public body." Focusing on the City's involvement in site preparation, the Board went on to determine that the "entire project" was covered by the Act.[3]

On appeal to this court,[4] petitioners contend that: (1) the trades councils lack standing to protest the Division's determination in this matter; (2) the project is not a public work and, therefore, is not subject to the provisions of the Act; and (3) the statutorily prescribed composition of the Board, with its automatic inclusion of two members of "historically established unions," is violative of Petitioners' rights of due process.

2. The contract indicates that the City complied with public bidding law requirements and accepted the bid of CMC. (Board's Finding of Fact, No. 14.) Article 3 of the contract provides in pertinent part:

    3.1 The CITY shall pay the CONTRACTOR for its performance herein. . . .

    3.2 Final payment . . . shall be made by the CITY to the CONTRACTOR when the work has been completed. . . .

(Board's Finding of Fact, No. 15.) Moreover, Article 15 of the contract provides:

    15.1 If the CITY fails to make payment thereon for a period of 30 days, the CONTRACTOR may, . . ., terminate the Contract and recover from the CITY payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages applicable to the Project.

(Board's Finding of Fact, No. 16.)

3. The Board declined to address whether any of the financing arrangements made with various public entities triggered coverage under the Act. The project was financed, in part, through (1) the Tax Increment Financing Act, Act of July 11, 1990, P.L. 465, 53 P.S. §§ 6930.1–690.13; (2) the Business Infrastructure Development Act, Act of July 2, 1984, P.L. 520, 73 P.S. §§ 393.1–393.12; and (3) the Housing and Redevelopment Assistance Law, Act of May 20, 1949, P.L. 1633, *reenacted* April 12, 1956, P.L. (1955) 1449, 35 P.S. §§ 1661–1676.

4. Our scope of review is limited to a determination of whether constitutional rights have been violated, whether the adjudication was in accordance with the law, and whether the Board's findings of fact are supported by substantial evidence. *Lycoming County Nursing Home Ass'n, Inc. v. Commonwealth, Dept. of Labor and Industry,* 156 Pa.Cmwlth. 280, 627 A.2d 238 (1993).

## I. Standing

■ With regard to Petitioners' first argument, we conclude that the trades councils have standing to bring this action.

Section 8 of the Act, 43 P.S. § 165–8 (emphasis added), provides in pertinent part:

[A]ny representative of any craft or classification of workmen ... may, within 10 days after the publication and issue of the specifications covering the *particular contract for public work* involved, file with the secretary a verified petition to review the determination of any such rate or rates.

In other words, the statute confers standing upon the trades councils to challenge the prevailing minimum wage rates contained in a particular contract for public work.

The issue in this case is whether the project defined by the development agreement between the City, HRA and PNI is a public work.[5] If it is, then the trades councils have a statutory interest in the prevailing minimum wage rate provisions of the City's contract with CMC for asbestos removal.[6] Because the trades councils have standing to challenge the prevailing wage rates *when* a particular contract is for public work, certainly they have standing to determine preliminarily *whether* a contract is for public work.

## II. Public Work

■ With regard to Petitioners' second argument, we are of the opinion that, because the project was paid for in part out of the funds of a public body, the project was indeed a "public work" within the meaning of the Act.

Here, the City solicited bids in compliance with public bidding law requirements for the removal of asbestos from certain property owned by the City and HRA. (Board's Finding of Fact, No. 14.) The City accepted the bid of CMC and entered into a contract with that company, agreeing to pay the contractor $109,000.00. Moreover, the contract makes the City liable for certain damages should the City fail to make timely payments. As the Board noted, the development agreement was not part of the contract and, in fact, section 4.2 of the contract expressly precludes any contractual relationships other than that between the City and CMC.

Moreover, the fact that the City has a contractual arrangement with PNI for the ultimate payment of the contract with CMC does not alter the public nature of these funds. Once the City accepts money from PNI on behalf of the public for payment of the contract, the PNI money, in essence, belongs to the public. Thus, the removal of asbestos from certain property related to the development agreement continues to be paid for in part out of the funds of a public body, making the entire project a public work under the Act.

## III. Due Process

■ Finally, Petitioners argue that section 2.2(c) of the Act,[7] relating to the Board's

---

5. The trades councils filed their grievance under section 2.2(e) of the Act, 43 P.S. § 165–2.2(e), which vests power in the Board to hear and determine any grievance or appeal arising out of the administration of the Act. According to 34 Pa.Code § 213.8, section 2.2(e) grievances include disputes as to the applicability of the Act to a project.

6. Section 4 of the Act, 43 P.S. § 165–4, requires the public body to incorporate the prevailing minimum wages into a contract for public work. However, because the City, the public body here, did not treat the project as a public work, the asbestos removal contract contains *no* provision for the payment of prevailing minimum wages. (*See* R.R. at 129a–51a.)

7. Subsections 2.2(c) and (d) of the Act, 43 P.S. § 165–2.2(c) and (d) (emphasis added), provide as follows:

(c) Of the seven members, [1] one shall be a representative of an association of general contractors engaged full-time in the building construction industry, [2] one shall be a representative of an association of heavy and highway contractors engaged full time in the heavy and highway construction industry, [3] one shall be a member of an *historically established union* representing labor in the building construction industry, [4] one shall be a member of an *historically established union* representing labor in the heavy and highway construction industry, [5] one shall be a member of an association representing a political subdivision, [6] one shall be learned in the law and employed by the secretary, and [7] one shall not be engaged in or employed by the building industry or by a public body but shall represent the general public....

(d) Four members of the board shall constitute a quorum and the board shall neither sit for

composition, is unconstitutional on its face because the automatic inclusion of two members of "historically established unions" is violative of Petitioners' constitutional right to be heard before a fair and impartial tribunal.[8] We disagree.

In *Leonard S. Fiore, Inc. v. Commonwealth, Dept. of Labor and Industry,* 129 Pa.Cmwlth. 583, 566 A.2d 632, 637 (1989), *rev'd on other grounds,* 526 Pa. 282, 585 A.2d 994 (1991), this court considered a due process challenge to the Board's statutorily-created composition and stated that the provisions of section 2.2(c) and (d) of the Act are "specifically established so as to avoid conflict while still retaining expertise in this area of the law." Thus, we saw no reason to change the Board's statutorily constituted membership. Likewise, here, we do not believe that the statutory composition of the Board is unconstitutional on its face as violative of Petitioners' due process rights.[9]

Accordingly, we affirm the order of the Board.

### ORDER

AND NOW, this 22nd day of November, 1995, the order of the Pennsylvania Prevailing Wage Appeals Board, dated January 13, 1995, is hereby affirmed.

---

purposes of hearing any grievance nor make any determination unless a quorum is present.

8. Petitioners also argue that the statute, *as applied,* violates their constitutional right to be heard by a fair and impartial tribunal. However, because Petitioners failed to raise this issue before the Board, it is deemed waived. *See* Pa. R.A.P. 1551(a).

Counsel for Petitioners initially objected before the Board that the Board was not constituted in accordance with the statute. However, the Board's chairperson informed counsel that each Board member had been duly appointed under the statute; indeed, there is no evidence in the record to indicate otherwise. (*See* R.R. at 666a.)

Then, although noting his objection to the composition of the Board for the record, instead of objecting to the ability of the statutorily constituted Board to be fair and impartial, counsel for Petitioners stated: "I trust that the Board can render a fair decision." (R.R. at 668a–69a.)

9. Indeed, by statute, only two of the seven Board members can be from "historically established unions" representing labor in certain construction industries. In a worst case scenario, where the Board would meet with a quorum of four members and two of those four would be from historically established unions representing labor in certain construction industries, only half of the Board would represent applicable labor interests.