**BOROUGH OF EBENSBURG,**
Petitioner

v.

**PREVAILING WAGE APPEALS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2005.

Decided Feb. 16, 2006.

---

Blair V. Pawlowski, Ebensberg, for petitioner.

James A. Holzman, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Borough of Ebensburg (Ebensburg) appeals from an order of the Prevailing Wage Appeals Board (Board) denying a grievance filed by Ebensburg with the Board. The Board determined that Ebensburg's curbing and sidewalk replacement project (Project) is subject to the Pennsylvania Prevailing Wage Act (Act), Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165-1—165-17. The Department of Labor and Industry, Bureau of Labor Law Compliance (Bureau), as intervenor, has filed a brief in support of the Board's final decision and order. We affirm.

Ebensburg, a public body under Section 2(4) of the Act, 43 P.S. § 165-2(4), contracted for the removal and replacement of entire sidewalks and curbing on West Lloyd Street in Ebensburg at an estimated cost of $159,600.00 Ebensburg did not add curbing or sidewalks where none previously existed. The cost for the removal of the curbing and sidewalks was paid by Ebensburg. Ebensburg informed property owners along West Lloyd Street that they would be assessed the actual bid price for the new sidewalk along their frontage and property owners were required to remit payment to Ebensburg for the cost of the sidewalk along their frontage. Ebensburg itself is the owner of several properties along West Lloyd Street that were involved in the Project.

On August 5, 2004, Daniel L. Penatzer, Ebensburg Borough Manager, sent a letter to Daniel Gioiosa, Labor Investigation Supervisor with the Bureau, outlining Ebensburg's position that the Project did not require prevailing wages under the Act. In a letter dated August 11, 2004, Mr. Gioiosa replied that the Project did require prevailing wages under the Act. Ebensburg then filed a grievance with the Board concerning Mr. Gioiosa's letter.

■ In an order dated April 18, 2005, the Board denied Ebensburg's grievance. The Board concluded that the complete removal and replacement of sidewalks is reconstruction work, and not maintenance work, for the purposes of Sections 2(3) and 2(5) of the Act. The Board further found that Ebensburg had not met its burden of proving that the combination of the in-kind replacement of curbing with the sidewalk reconstruction work in a single contract, otherwise meeting the requirements of Section 2(5) of the Act, qualified for exemption as maintenance work. The Board concluded that the funds paid to Ebensburg through the assessments of property owners, and used for the reconstruction of sidewalks, constituted the funds of a public body within the intendment of Section 2(5) of the Act. The Board refused to divide the Project into sidewalk and curbing portions or into prevailing wage and exempt prevailing wage portions. Rather, the Board concluded that reconstruction involving the removal and replacement of a sidewalk and curbs, done under a single contract having an estimated total cost in excess of $25,000.00, and which contract is paid for in part with the funds of a public body, qualifies as "public work" under Section 2(5) of the Act, and all workmen engaged in the underlying Project must be paid the prevailing wages as determined by the Secretary of Labor and Industry, regardless of whether their work is devoted to the sidewalk or curbing portions. Ebensburg appealed the Board's determination to this Court.[1]

1. Our review is limited to determining whether constitutional rights were violated, an er-

Ebensburg requests this Court to decide whether the Board erred in determining that the Project was not exempt "maintenance work" within the meaning of the Act or, in the alternative, whether the Board erred in determining that the Project was not divisible into non-exempt sidewalk reconstruction and exempt curbing maintenance portions. Ebensburg also argues that the Board erred in determining that the Project was paid for entirely with public funds.

■ First, the purpose of the Act is "to protect workmen employed on public projects from substandard pay by ensuring that they receive the prevailing minimum wage." *Kulzer Roofing, Inc. v. Department of Labor and Industry,* 68 Pa. Cmwlth. 642, 450 A.2d 259, 261 (1982).

Section 5 of the Act requires that "[n]ot less than the prevailing minimum wages . . . be paid to all workmen employed on public work." 43 P.S. § 165–5. The term "public work" is defined in Section 2(5) as:

Construction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract and paid for in whole or in part out of the funds of a public body where the estimated cost of the total project is in excess of twenty-five thousand dollars ($25,000), but shall not include work performed under a rehabilitation or manpower training program.

43 P.S. § 165–2(5). The Act defines "maintenance work" as "the repair of ex-

isting facilities when the size, type or extent of such facilities is not thereby changed or increased." 43 P.S. § 165–2(3). Thus, if the work contracted is maintenance work, it is not "public work" and is not governed by the Act. None of the other types of work mentioned in Section 2(5) is defined in the Act or its regulations.

■ Ebensburg first argues that the Board erred in finding that its curb and sidewalk project was not exempt from the Act asserting it was maintenance because Ebensburg relied on a Memorandum of Understanding (MOU) between the former Department of Justice/Department of Labor and Industry and the Department of Transportation.[2] The MOU defines "maintenance under the Act as replacement of curb in kind but also defines new curb as not maintenance and, in a combination job, if a substantial portion of the job (more than 15%) is not maintenance, the entire job is not maintenance."[3] Also reconstruction is not maintenance. Sidewalks are not mentioned. R.R. at 17a and 38a. The Board found that the Ebensburg project was a reconstruction project and as such, was not covered by the MOU which only defined maintenance under the Act. Even under the terms of the MOU the entire project is not maintenance if a substantial portion of the job, that is, more than 15%, is not maintenance. The Board found that Ebensburg as the moving party had the burden of proving that sidewalks were fifteen percent or less of the Project in order

ror of law was committed, and whether necessary findings are supported by substantial evidence. *Boss Insulation & Roofing v. Department of Labor and Industry,* 722 A.2d 778 (Pa.Cmwlth.1999).

2. There are two undated MOUs at pages 17a and 38a of the Reproduced Record. Ebensburg does not cite to either one nor indicate which it relies on.

3. Although the MOU at page 38a of the Reproduced Record states otherwise, the Board's Opinion states the MOU at page 38a of the Reproduced Record is an obvious error and neither party objected on appeal that the correct reading would be that if more than 15% is non-maintenance, the entire job is non-maintenance since that was consistent with the MOU at page 17a of the Reproduced Record.

for the job to be determined as maintenance and in fact, Ebensburg failed to carry its burden of proving what percentage of the job was completed as sidewalks or curbs. We agree.[4]

The Board felt this case was analogous to *Henkels & McCoy, Inc. v. Department of Labor & Industry*, 143 Pa.Cmwlth. 264, 598 A.2d 1065 (1991), *petition for allowance of appeal denied*, 530 Pa. 667, 610 A.2d 46 (1992) where a telephone system was replaced at a state building, but the existing telephone poles and tunnels were used. Old conduit and old cable were ripped out and new cable and finished conduit were installed. Electricians challenged the wages paid to installers which were below their rate. That work was held to be public work under the Act not maintenance work exempt from it.

Actually, the Ebensburg project is clearer than *Henkels & McCoy, supra*. Here, there were no existing sidewalks or curbs left in place unlike the telephone poles and tunnels used in *Henkels & McCoy, supra*. The Supreme Court of Pennsylvania defined "reconstruct" as "to construct again; to rebuild; to form again or anew." *Contas v. Bradford*, 206 Pa. 291, 55 A. 989 (1903).

When every bit of sidewalk and curbing described in the Project has been demolished, it is obvious that the sidewalks and curbs on West Lloyd Street were not merely being overhauled or patched. It is similar to the demolition of a building and the replacement of the building with an exact replica of the same size, type and extent. The repair argument does not weaken the conclusion that the project is reconstruction which is in accordance with the Supreme Court's definition of reconstruct as to construct again or to rebuild anew. *Contas*. We do, therefore, agree with the Board that this project was reconstruction, and not just a change in the size, type or extent of the facility that would have made it maintenance.

■ Next, Ebensburg argues that the project was not paid for in whole or in part with public funds because the property owners on West Lloyd Street ultimately paid entirely for the sidewalks by way of an assessment which Ebensburg levied after paying the contractor for the entire bill which also included the curbing. Ebensburg claims the Board could easily divide the cost of the curbing which was solely paid by Ebensburg from the sidewalk costs which were later paid back to Ebensburg by the property owners. The fact that it was later reimbursed from private citizens does not, however, except this contract from being "paid for in whole or in part out of the funds of a public body" because the fact that its funds were replenished is immaterial. In *Pennsylvania National Mutual Casualty Insurance Co. v. Department of Labor & Industry*, 667 A.2d 753 (Pa.Cmwlth., 1995), *rev'd on other grounds*, 552 Pa. 385, 715 A.2d 1068 (1998), a private company advanced funds to a public body to prepare the site to construct that company a new headquarters.

4. Even though Ebensburg's project is not covered by the MOU, it should have been apparent to Ebensburg that the MOU was a separate understanding between two Commonwealth agencies attempting to interpret a statute and that it would not be binding·in Court as to a third party as a regulation would. It was also apparent that the MOU did not cover sidewalks and was obviously intended to cover only PennDOT roads and bridge work. There was therefore, no grounds for Ebensburg to proceed with its sidewalk project relying on the MOU without seeking clarification in advance from the Department of Labor and Industry to determine if it would be necessary to have separate or combination curbing and sidewalk contracts and whether it would be afforded maintenance treatment if it did so.

The work was held to have been done with public funds because just as here, the origin of the funds is not the determining factor. The payment by the public body governs. Since the Act only requires part of the contract to be paid out of public funds and Ebensburg admits it paid for all of the curbing, there is no question part of the contract was paid for out of public funds. Ebensburg argues, however that the sidewalk costs should be separated from the curbing. There is no proof that the Ebensburg contract was intended to be separable in any respect and the Board properly rejected Ebensburg's contention to report the costs of the curbing from those of the sidewalks.

This Project, the demolition and reconstruction of sidewalks and curbing, done under contract, paid for at least in part out of the funds of a public body, and with an estimated cost in excess of twenty-five thousand dollars, falls within the definition of "public work" in Section 2(5) of the Act and is thus subject to the prevailing wage provisions of that Act. Accordingly, the order of the Prevailing Wage Appeals Board is affirmed.

### ORDER

AND NOW, this 16th day of February, 2006 the order of the Prevailing Wage Appeals Board is affirmed.