**BOROUGH OF YOUNGWOOD,**
Petitioner

v.

**PENNSYLVANIA PREVAILING WAGE APPEALS BOARD,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2007.

Decided Dec. 24, 2007.

Gerald J. Yanity and Gerald W. Yanity, Latrobe, for petitioner.

James A. Holzman, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge McGINLEY.

The Borough of Youngwood (Youngwood) challenges the order of the Pennsylvania Prevailing Wage Appeal Board (PWAB) which denied Youngwood's grievance of the Department of Labor and Industry's (DLI) determination that Youngwood's construction project was non-maintenance and therefore subject to the prevailing minimum wage. The DLI Bureau of Labor Law Compliance (Bureau) has filed a brief in support of the PWAB's final decision and order as an intervenor.

In 2005, Youngwood solicited bids on a project to perform work on several roads, and entitled the Project as the "Youngwood Borough 2005 Street Resurfacing Project" (Project), with an estimated cost of $183,209, $71,000 of the cost would be paid from PennDOT's Liquid Fuels Tax Funds, and the remainder from Youngwood's general fund. The Project consisted of resurfacing five streets, surface treatment of two streets, minor drainage of one street, patching one street, constructing six catch basins, replacing existing piping and french drains, raising a manhole cover with a one-inch spacer ring, plus additional labor to treat and finish the work. Youngwood Borough 2005 Street Resurfacing and Improvement Project, Estimated Cost Projection (Cost Projec-

tion); Reproduced Record (R.R.) at 26a. Youngwood estimated that milling and repaving of the five streets, which it categorized as maintenance although the streets were to be completely resurfaced, would make up approximately 40% of the total cost. In all, Youngwood determined that only 11.3% of the estimated Project cost of $183,209 was non-maintenance, and that the remaining 88.7% was maintenance. Cost Projection; R.R. at 26a.

After completion of the Project, the Bureau, which enforces the Prevailing Wage Act (Act),[1] contacted Youngwood to investigate the Project's particulars and deemed it a reconstruction project. The Bureau concluded that because the Project was reconstruction, it required prevailing minimum wages under the Act. Letter from the Bureau to Youngwood (Letter), December 30, 2005, at 1–4; R.R. at 11a–14a.

Youngwood filed a Grievance with the PWAB on February 17, 2006, challenging the determination of the Bureau. After an evidentiary hearing on October 4, 2006, and oral argument on November 21, 2006, the PWAB denied Youngwood's Grievance on January 19, 2007. Youngwood appealed.

■ Section 4 of the Act, 43 P.S. § 165–5, requires prevailing minimum wages for public works. Public works are defined as "construction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract and paid for in whole or in part out of the funds of a public body where the estimated cost of the total project is in excess of twenty-five thousand dollars...." Section 2(5) of the Act, 43 P.S. § 165–2(5). The purpose of the Act is to protect workers employed on public pro-

1. Act of August 15, 1961, P.L. 987 as amend- ed, 43 P.S. §§ 165–1—165–17.

jects from substandard pay by ensuring that they receive the prevailing minimum wage. *Pennsylvania Prevailing Wage Appeals Board v. Steve Black, Inc.,* 27 Pa.Cmwlth. 21, 365 A.2d 685 (1976).

A reconstruction project contrasts sharply, then, from a maintenance project, because Youngwood would be required to pay prevailing wages. When it made the determination that the Project was maintenance Youngwood relied on a publication issued by PennDOT entitled "Policies and Procedures for the Administration of the County Liquid Fuels Tax Act of 1931 and The Liquid Fuels Tax Act 655" (Publication 9), effective January 2003. Publication 9 included, in chart form, the information contained in an unsigned and undated Memorandum of Understanding (MOU) promulgated between DLI and PennDOT that incorporated PennDOT's interpretation of the term "maintenance" under the Act. MOU; R.R. at 360a. Publication 9, Figure 2.2 at 2–0; R.R. at 39a.

Specifically, the MOU provided that replacement in kind of guide rail, curb, and pipes was maintenance, as was black top paving laid on asphalt pavement, cement concrete, or other hard surface up to three and a half inches thickness or up to 420 pounds per square yard. The MOU noted that maintenance with cement concrete pavement would be pavement patching including joint spalling and repair work. This MOU further stated that "[c]ombination/[r]ehabilitation/[r]econstruction [p]rojects on an existing alignment . . . , [i]f non-maintenance items exceed 15% of the total project cost, the project will be treated as a non-maintenance contract."[2] Publication 9, Figure 2.2, at 2–9; R.R. at 39a.

After the Project was completed the Bureau informed Youngwood that the MOU "is no longer in use and *does not* reflect the prevailing wage requirements under the Act. Additionally, [Youngwood] is not a party to the [MOU]." (emphasis added) Letter at 3; R.R. at 54a. Further the DLI had stopped using the MOU in January 2005, but did not inform PennDOT until September or October of 2005, after the Project was completed. PWAB Final Decision and Order, January 1, 2007, Findings of Fact (F.F.) Nos. 20–21.

Youngwood contends that, in addition to the interpretation of maintenance within the MOU, the Project was maintenance work because it met the Act's definition of "repair of existing facilities when the size, type or extent of such facilities is not thereby changed or increased." Section 2(3) of the Act, 43 P.S. § 165-2(3). Youngwood notes that maintenance also includes work on a facility that, once in useable condition, is restored to that condition by being partially overhauled or patched, without a change in its size or type. *Butler Balancing v. Department of Labor and Industry,* 780 A.2d 840 (Pa. Cmwlth.2001).

Particularly contentious is whether "milling" a roadway, grinding down the surface so that when a new "top" is laid it will meet up with existing drainage facilities, is construction or demolition, subject to prevailing wages, or merely maintenance. *See* N.T. at 15–17; R.R. at 175a–177a. Milling and repaving work constituted 40% of the Project, and made categorization of milling as construction by the PWAB dispositive. Before this Court, Bureau argues that Youngwood did not carry its burden of proof to demonstrate that the Project was maintenance rather than construction or reconstruction because it in-

---

**2.** The MOU contained an obvious typographical error where it stated that a project will be treated as "non-maintenance" if the mainte- nance exceeds 15% of the total project cost. This typographical error appears to be corrected in Publication 9, Figure 2.2.

volved much more than the partial overhaul or patching of the roadway. In many areas, Youngwood's contractors milled the roadway down three and one half inches, in some places more where the underlying road was "alligatored." They did this believing that laying no more than three and one half inches of blacktop to bring the road surface back to its original level to mesh with the existing drainage facilities complied with the MOU and therefore the Act.

This Court has not had the opportunity to address whether milling of a roadway in anticipation of repaving is maintenance or construction, i.e., whether it is subject to prevailing minimum wages. Youngwood asks this Court to extend to milling of streets the reasoning that the partial overhaul or patching of a public work or component thereof is considered maintenance when it does not effect a change in the size or type of the public work.[3]

In *Kulzer Roofing, Inc. v. Department of Labor & Industry*, 68 Pa.Cmwlth. 642, 450 A.2d 259 (1982), this Court held the reroofing of eight buildings to be repair rather than maintenance, subject to prevailing minimum wages, because the entire roof of each building was replaced, rather than partially overhauled or patched. If the work was of "a manner as to effect a change in its size or type, the project would be repair work." *Id.* at 261. The inverse implication of that holding, noted this Court, was that "maintenance work would occur when a facility was partially overhauled or patched." *Id.*

*Kulzer* provides less guidance than Youngwood suggests. This Court believes that *Kulzer* should be read to limit the definition of maintenance work to only those cases when partial overhaul or patching occurs. Repair, when the work is of a manner to effect a change in the facility's size or type is less clear-unfortunately, there is no indication from *Kulzer* what extent of change in the roof would be necessary to occasion a change in size or type. Indeed, it appears from *Kulzer* that simple replacement of an old roof with a new roof, and thus an old roadtop with a new roadtop, is a change in type and therefore "repair work," not "maintenance work."

■ The recent precedent established by *Kulzer* is instructive here. The replacement of old road with new, through the process of milling and repaving, similar to and consistent with the replacement of roofing in *Kulzer*, is non-maintenance work, subject to prevailing minimum wages.

Youngwood contends that, even should milling and repaving be found to be construction or reconstruction and subject to prevailing minimum wages, it justifiably relied upon the MOU which it believed classified the Project as maintenance work not subject to prevailing wages. Youngwood argues its reliance on the MOU was justifiable and that this reliance should outweigh the Bureau's determination, especially because the MOU applied to road and bridge projects funded by Liquid Fuels funds, as was this Project. Bureau counters that reliance on the MOU was misplaced because the Borough was not a party to the MOU, because the MOU was issued by an agency without jurisdiction under the Act, and because the MOU was invalid and did not address local road projects.

---

3. This Court's review is limited to determining whether constitutional rights were violated, whether the PWAB committed an error of law, and whether necessary findings are supported by substantial evidence. *International Union of Bricklayers and Allied Craftworkers Local 5 v. PWAB,* 778 A.2d 1264 (Pa.Cmwlth. 2001).

In *Ebensburg v. Prevailing Wage Appeals Board*, 893 A.2d 181 (Pa.Cmwlth. 2006), this Court addressed a similar issue. The Borough of Ebensburg undertook a project to demolish and reconstruct sidewalk and curbing along a street at an estimated cost in excess of the statutory requirement of $25,000, using public funds. The MOU at issue in that controversy defined "maintenance under the Act as replacement of the curb in kind but also define[d] installation of new curb as *not* maintenance." (emphasis added) *Id.* The MOU did not cover the sidewalks. This Court held that the Borough could not rely on the MOU because "it should have been apparent to Ebensburg that the MOU was a separate understanding between two Commonwealth agencies attempting to interpret a statute ... that ... would not be binding in Court as to a third party...." *Id.* at 185, fn. 4.

 In what may very much seem like splitting hairs, Youngwood may indeed have relied upon the MOU in its conclusion that the Project was not subject to the minimum prevailing wage requirements of the Act. But Youngwood's reliance was misplaced. Youngwood, like any other municipal body, had the DLI at its disposal, and Youngwood chose to forego communication with that agency, and instead relied on an unsigned and undated MOU to which Youngwood was not a party. This Court does not consider such reliance justifiable. A holding that Youngwood's reliance was justifiable would be inconsistent with recent precedent, and is unwarranted under the circumstances

 Further, just as the demolition and reconstruction of the curb in *Ebensburg* was found to be construction and subject to prevailing minimum wages, this Court believes that grinding away the top three

and one half inches or more of roadway and the laying down of new road, adding materials like Petromat which was not included in the first iteration of the roadway, constituted non-maintenance activity subject to prevailing minimum wages under the Act.[4] Because of the foregoing, and because the PWAB did not commit an error of law and the findings were supported by substantial evidence, this Court agrees with the PWAB.

Accordingly, this Court affirms.

### ORDER

AND NOW, this 24th day of December, 2007, the order of the Pennsylvania Prevailing Wage Appeal Board in the above-captioned matter is affirmed.

DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. I do not believe that preparing a road for new blacktop is "repair" but, rather, "maintenance." Accordingly, I would reverse the Pennsylvania Prevailing Wage Appeal Board.

In *Kulzer Roofing, Inc. v. Department of Labor & Industry*, 68 Pa.Cmwlth. 642, 450 A.2d 259, 261 (1982), this Court held that the re-roofing of buildings "which changes or increases the size, type or extent of the roof is repair work" and not maintenance. We further explained that "maintenance work" is work that "partially overhauls or patches" a roof without changing or increasing the size or extent of the roof. In *Borough of Ebensburg v. Prevailing Wage Appeals Board*, 893 A.2d 181, 185 (Pa.Cmwlth.2006), we held that where every bit of sidewalk and curbing was demolished prior to replacement, this was not an overhaul or mere patching expected in maintenance. Appropriately,

---

4. See N.T. at 35–37; R.R. at 195a–197a.

we held that destroying a sidewalk and entirely replacing it constitutes a "repair" subject to the prevailing wage requirements. I agree with the majority that *Kulzer* and *Ebensburg* are instructive here, but I disagree with the lesson to be learned.

An examination of the project at issue here shows that the Borough of Youngwood is not replacing an old road with a new road. The top of the road is being "milled" in preparation for laying down the new surface material. It is, as the Borough points out, similar to the process of scraping off peeling paint before putting down a new layer of paint. Milling is preparation for the "partial" overhaul to the road that leaves the road bed and subsurface areas unaffected. Milling does not increase the "size, type or extent" of the road. Under *Kulzer*, the project constituted maintenance, not repair.

Further, the milled road can be continued to be used until the new surface is applied. This makes the project quite unlike that in *Ebensburg* where the sidewalks and curbing were demolished. There was no sidewalk to use until it was replaced. By contrast, here the milled road awaiting resurfacing can and will continue to be used until the repaving is complete.

The majority describes the project as "the laying down of new road." Majority Opinion at 8. Under this logic, applying "new" paint to the surface of a building is repair not maintenance. Maintenance projects will always require the use of some "new" materials. The majority's emphasis on "new" obliterates the difference between maintenance and repair.

The Borough of Youngwood was not trying to evade the Prevailing Wage Act. It researched the question and relied upon directives from Commonwealth agencies that its project did not implicate the Prevailing Wage Act. Further, the Borough's belief that milling constitutes maintenance is consistent with what other sources advise. The City of Pittsburgh, for example, specifically identifies milling as maintenance on its website.[1]

All roads require maintenance in the form of periodic reapplication of a surfacing material. Only where the substrata are replaced should the roadwork be considered a repair project governed by the Prevailing Wage Act. Given the limited nature of the Borough's project, I would reverse the Board.

Judge SIMPSON joins in this dissent.

1. See *http://www.city.pittsburgh.pa.us/pw/* *html/street_resurfacing.html.*