**BOSS INSULATION & ROOFING, INC., and W. Max Bossert, Jr., Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 2, 1998.

Decided Jan. 6, 1999.

---

Thomas R. Davis and Neil P. Robertson, Lancaster, for petitioners.

Peter Von Getzie, Harrisburg, for intervenor, Bureau of Labor Law Compliance.

Before McGINLEY, J., SMITH, J., and McCLOSKEY, Senior Judge.

SMITH, Judge.

Boss Insulation and Roofing, Inc. and W. Max Bossert, Jr. (Petitioners) appeal from an order of the Pennsylvania Prevailing Wage Appeal Board (Board) that affirmed the decision of the Secretary of Labor and Industry debarring Petitioners for a period of three years from bidding on public works projects due to Petitioners' intentional violation of Section 5 of the Pennsylvania Prevailing Wage Act (Act), Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §165–5, on two public works projects.[1] Petitioners argue that the Prevailing Wage Division did not meet its burden of proof because the evidence in the record does not support the findings of fact and that the penalty imposed is unduly harsh.

Boss Insulation and Roofing Inc. is a corporation having its principal place of business in Lewisburg, Pennsylvania. W. Max Bossert, Jr., is the president of Boss Insulation and serves as an agent for the corporation. Petitioners bidded on and were awarded contracts for roof replacement for Clarion Area School District (Clarion) and reroofing for Highland Elementary School, DuBois Area School District (DuBois). The contracting bodies, i.e., school districts, are "public bod-

---

1. Section 5 of the Act provides that not less than the prevailing minimum wage must be paid to all workers employed on public work.

ies" pursuant to Section 2(4) of the Act, and the projects constitute "public work" pursuant to Section 2(5) of the Act, 43 P.S. §165–2(4), (5). The project specifications included a predetermination of the prevailing minimum wage rates, and Petitioners were aware at the time of contract bidding that the projects were prevailing wage jobs. Neither party challenged the predeterminations. On or about July 14, 1991, Petitioners commenced work on the projects, and the work is now completed.

The employees on the DuBois project typically worked eight-hour days. The hours for the employees were written down and submitted by the foreman. The Hearing Examiner found that Petitioners discarded the time reports submitted by the foreman, and they were not used to calculate hours for prevailing wage purposes. Instead Petitioners reduced the hours so that labor costs would not exceed the bid for the project. Consequently, Petitioners' payroll certifications included work hours that were lower than the actual number of hours worked and wages that were lower than the wages due to the employees. The payroll reports indicate that for the week ending July 21, 1991 all of the employees worked 4.53 hours each day, and for the week ending July 27 each employee worked either four or five hours per day. Also on various other occasions, the employees' hours were calculated down to the hundredths of an hour, while Petitioners' records for non-prevailing wage work documented eight-hour workdays and did not record time in the hundredths of an hour. Additionally, for the week ending August 31, 1991, employees on the Clarion job were paid based on budgeted labor costs computed by square footage of roof area and not by actual work hours.

The Hearing Examiner accepted as credible the testimony of an employee, Don Long, who worked on the Clarion job. He testified that he was only paid for 19 of 39.5 actual hours worked for the week ending September 4, 1991. The findings of fact state that Mr. Long was not paid for approximately 20.5 hours worked the week of September 4 and was paid $463.10 less than the predetermined prevailing wages. The testimony of Sharon Hackenberg was likewise accepted. Ms. Hackenberg was the bookkeeper for Petitioners during the period of the projects and was responsible for filling out the payroll records. She testified that the foreman on the DuBois project would give her the time records for the employees and that they usually indicated an eight-hour workday. However, Petitioners would discard the time reports and provided her with records that showed reduced hours. Further, she stated that she was instructed by Petitioners to change the hours so that the amount would come out of the bid for the contract and that the hours on several of the payroll forms were created by Petitioners and were not the actual number of hours worked by the employees.[2]

The Hearing Examiner determined that Petitioners intentionally underpaid the minimum wage to their employees by $6,640.05 for both projects. He recommended that the Secretary adopt his findings and conclusions, notify all contracting bodies of Petitioners' names and request the Attorney General to take appropriate action. The Secretary concluded that the findings of fact were supported by substantial evidence, denied Petitioners' exceptions to the Hearing Examiner's findings and recommendations and determined that Petitioners intentionally violated the Act. In accordance with Section 11(e) of the Act, 43 P.S. §165–11(e), Petitioners were barred for three years from bidding on any future public works contracts, and the Secretary stated that he would request the Attorney General to recover statutory liquidated damages for the Commonwealth. The Board affirmed the decision, and Petitioners appealed to this Court.[3]

---

**2.** Section 6 of the Act, 43 P.S. §165–6, provides in relevant part that every contractor shall maintain an accurate record of the names, craft and actual hourly rate of wage paid to each worker employed on a public works project.

**3.** This Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Pennsylvania Prevailing Wage Appeals Board v. Steve Black Inc.,* 27 Pa. Cmwlth. 21, 365 A.2d 685 (1976).

■ Petitioners argue that the record does not support the findings of fact by the Hearing Examiner because his credibility findings were in error. They contend that Mr. Long's credibility should be placed in doubt because he kept records of his work hours for the sole purpose of reporting Petitioners to the Department of Labor, and he left his employment under unfavorable circumstances. Respondent argues that the substantial evidence issue was not preserved for review but nonetheless asserts that such evidence exists to support the Board's decision. The Hearing Examiner found the testimony of Mr. Long and Ms. Hackenberg credible, and since the Secretary did not reverse the Hearing Examiner's credibility findings, they are binding on the Court. *See Leonard S. Fiore, Inc. v. Department of Labor and Industry, Prevailing Wage Appeals Board*, 526 Pa. 282, 585 A.2d 994 (1991). Questions of credibility are resolved by the Secretary. *DiLucente Corp. v. Pennsylvania Prevailing Wage Appeals Board*, 692 A.2d 295 (Pa.Cmwlth.1997).

■ Petitioners suggest that the evidence is insufficient also because the only testimony presented by Respondents was that of Mr. Long, while the other eight employees and the foreman did not testify. Moreover, the audit of Petitioners' payroll resulted from complaints by Mr. Long, and no other complaints have been made against Petitioners by other employees. In *All–Weld, Inc., v. Department of Labor and Industry*, 34 Pa. Cmwlth. 482, 383 A.2d 982 (1978), this Court held that the testimony of all four allegedly underpaid employees was not necessary to support the hearing examiner's findings. In addition, the Secretary of Labor and Industry has the power to supervise compliance with the Act by authorizing field inspectors to audit payroll records independently to determine if there is a failure to pay the minimum wage rates. *Pennsylvania Prevailing Wage Appeals Board v. Steve Black Inc.*, 27 Pa.Cmwlth. 21, 365 A.2d 685 (1976). Thus whether the audit of Petitioner was based on information solely provided by Mr. Long is irrelevant.

■ Next Petitioners argue that the evidence does not support a finding of intentional violation of the Act and that such a finding places severe harm on Petitioners' ability to conduct business because they no longer have the right to bid on prevailing wage jobs for a period of three years. Section 11(h)(1) of the Act, 43 §165–11(h)(1), provides in pertinent part: "The following shall constitute substantial evidence of intentional failure to pay prevailing wage rates: (1) Any acts of omission or commission done wilfully or with a knowing disregard of the rights of workmen resulting in the payment of less than prevailing wage rates." Added to that standard is the requirement that the evidence presented must show a contractor's knowledge of the inaccuracy of its records and its persistence in maintaining such records. *Leonard S. Fiore, Inc.* After carefully reviewing the record in this case, the Court is satisfied that substantial evidence was produced of acts knowingly committed by Petitioners in disregard of the rights of workers which establish Petitioners' intentional violation of the Act. The evidence produced includes, inter alia, acts of inaccurate recordkeeping and reporting on payroll records.

■ The Board imposed the mandatory penalty required by Section 11(e) of the Act. As the Board correctly applied the statute and possessed no discretion over the imposition of penalty, its actions cannot constitute an abuse of discretion. *Steve Black Inc.* Petitioners cite *Ronca Utilities Construction Co., Inc., v. Department of Labor and Industry*, 33 Pa.Cmwlth. 291, 381 A.2d 510 (Pa. Cmwlth.1978), for a contrary result. However, *Ronca* is factually distinguishable. A hearing was held in that case at which the Commonwealth presented evidence, but the petitioner failed to appear due to its clerical oversight. The hearing examiner found that the petitioner intentionally violated the Act. On appeal this Court held that the petitioner should be given an opportunity to present evidence at a second hearing because of the circumstances, including the harsh penalty imposed under Section 11(e), the mandatory nature of the penalty, the petitioner's prior history of compliance with the Act and the facts pertaining to the petitioner's failure to appear at the initial hearing. In the present case, Petitioners were afforded a full hearing

and an opportunity to present evidence on their behalf.

The Court's statement in *Ronca* that the petitioner's prior history of compliance must be considered pertained solely to the issue of the petitioner's entitlement to a hearing under the circumstances noted. The Court expressly stated that the penalty under Section 11(e) is mandatory. Petitioners nonetheless maintain that the three-year suspension penalty should not be imposed because the violations occurred six years ago, they were for a minor dollar amount, and time clocks were installed in company vehicles long before the Prevailing Wage Division took its case before the Hearing Examiner. Petitioners cite no persuasive authority to indicate that those factors in any way mitigate the intentional acts committed by Petitioners. Because the Secretary has no discretion as to the penalty imposed after finding an intentional violation of the Act, *Steve Black Inc.*, the Court must affirm the order of the Board.

### ORDER

AND NOW, this 6 th day of January, 1999, the order of the Prevailing Wage Appeal Board is affirmed.