**RAYA AND HAIG HAIR SALON, Petitioner**

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2006.

Decided Jan. 25, 2007.

Mark Jaffe, Philadelphia, for petitioner.

Charles L. Nier, III, Philadelphia, for respondent.

BEFORE: SIMPSON, Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The Raya and Haig Hair Salon (Employer) petitions for review of a supplemental order of the Pennsylvania Human Relations Commission (Commission) ordering, *inter alia,* Employer to cease and desist from discriminating against persons because of their sex and further ordering Employer to pay to Aida Armani (Complainant) damages caused by Employer's unlawful discriminatory conduct.

Complainant was employed by Employer as a hair colorist from May 23, 1989 until April 25, 1997. Beginning in 1989 when Leonard Kadyshes was Complainant's customer, Kadyshes began verbally and physically sexually harassing Complainant by telling sexual jokes, making comments about Complainant's breasts, telling Complainant that she would be good in bed, telling Complainant that he would personally perform an abortion if she became pregnant, calling Complainant a "bitch", touching Complainant's rear end, placing his arms around Complainant, placing his hands in Complainant's pockets, rubbing up against Complainant, and repeatedly poking Complainant in the shoulder. This steady behavior continued from 1995 to 1997 when Kadyshes became Employer's business manager and Complainant's direct supervisor.

Complainant complained to Employer's owner on at least six occasions and no action was taken with regard to Kadyshes' conduct. On January 23, 1997, Complainant informed Employer's owner that she was going to resign her position due to Kadyshes' harassment. Employer said that he would take care of the situation but did not. Complainant began looking for a comparable position with another hair salon and decided to open her own salon. However, prior to Complainant's formal resignation, Employer learned on April 24, 1997 that Complainant was in the process of opening her own salon. Consequently, Employer immediately terminated Complainant. Complainant opened her own salon on May 13, 1997.

On October 21, 1997, Complainant filed a complaint with the Commission alleging that Employer unlawfully discriminated against her in terms and conditions of her employment, subjecting her to a hostile work environment, and constructively discharging her because of her sex. On January 21, 2001, Complainant filed an amended complaint and Employer filed an answer on February 12, 2001. After an investigation, the Commission notified the parties that probable cause existed to credit the allegations. After a failed attempt at conciliation, public hearings were held in this matter on September 12 and 13, 2002 and November 22, 2002.

Based on the evidence presented, the Commission found that Complainant established by a preponderance of the evidence that Employer unlawfully discriminated against Complainant in her employment by subjecting Complainant to a hostile work environment and discharging her because of her sex. Therefore, by order of June 30, 2004, the Commission found Employer liable and the matter was reopened for the purpose of the parties presenting addition-

al information on the question of appropriate damages.

A hearing on damages was held on July 26, 2005. Thereafter, the Commission, by order of January 24, 2006, ordered Employer to: (1) cease and desist from discriminating against persons because of their sex; (2) provide appropriate training to its management employees; (3) pay Complainant back pay from April 25, 1997 through December 31, 2000 in the amount of $156,421.00 with additional interest at the rate of 6%; and (4) pay Complainant $259.20 for out-of-pocket costs caused by Employer's unlawful discriminatory conduct. This appeal followed.

Herein, Employer raises the following issues:

(1) Whether the Commission abused its discretion and its decision is against the weight of the evidence as to whether Complainant worked in a hostile environment and was constructively discharged;

(2) Whether the Commission should have refrained from allowing testimony related to circumstances which predated the time frame in which Complainant alleged the discrimination occurred;

(3) Whether the Commission wrongfully determined that Complainant attempted to mitigate her damages; and

(4) Whether the Commission's findings of fact are supported by substantial evidence regarding Complainant's earnings.

■ This Court's review of an order of the Commission is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether the necessary findings of fact are supported by substantial evidence. *Spanish Council of York, Inc. v. Pennsylvania Human Relations Commission*, 879 A.2d 391 (Pa.

Cmwlth.2005). It is axiomatic that it is the fact finder's sole and exclusive province to judge credibility of witnesses, and to weigh the evidence. *Id.* These matters are solely for the Commission, and are not within the scope of this Court's review in our appellate function. *Id.* Further, the relevant inquiry on appeal is not whether evidence of record supports findings other than those actually made by the Commission as fact finder, but rather whether substantial evidence of record exists that supports those findings actually made by the Commission. *Id.*

In support of the first issue, Employer challenges the sufficiency and the weight of the evidence. Employer argues that the conflicting testimony of Complainant and the documents submitted into evidence should have rendered a decision in Employer's favor. Employer contends that the evidence shows that Complainant was not subjected to a hostile work environment or constructively discharged but rather she was discharged for opening her own salon. Employer argues that there is a lack of evidence to suggest that Complainant was discriminated against due to her sex. Employer contends that Complainant was continuously one of the highest paid employees and was able to conduct her own business while working for Employer. Employer argues further that there is also a lack of evidence of pervasive and regular harassing or discriminatory behavior.

■ Pursuant to Section 5(a) of the Pennsylvania Human Relations Act[1] (PHRA), "[i]t shall be an unlawful discriminatory practice ... [f]or any employer because of the ... sex ... of any individual ... to discharge from employment such individual ... or to otherwise discriminate against such individual ... with respect to

---

**1.** Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a).

compensation, hire, tenure, terms, conditions or privileges of employment or contract ... " In order to prima facie establish a hostile work environment under the PHRA, a complainant must prove that she: (1) suffered intentional discrimination because of her race or gender; (2) the harassment was severe or persuasive and regular; (3) the harassment detrimentally affected her; (4) the harassment would detrimentally affect a reasonable person of the same protected class; and (5) the harasser was a supervisory employee or agent. *Infinity Broadcasting Corporation v. Pennsylvania Human Relations Commission*, 893 A.2d 151 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 588 Pa. 785, 906 A.2d 545 (2006). In determining whether harassment was severe or pervasive enough to support a hostile work environment claim, the courts must determine whether the employee suffered retaliatory harassment severe or pervasive enough to alter the conditions of her employment and create an abusive working environment. *Jensen v. Potter*, 435 F.3d 444 (3d Cir.2006).

■ Herein, substantial record evidence supports the finding made by the Commission that Employer violated the PHRA by allowing the existence of a hostile work environment based on Complainant's sex. The Commission recognized that the testimony in this matter was conflicting. However, in judging credibility, the Commission accepted as credible, the testimony of Complainant as it was clear, concise and corroborated by numerous witnesses. The Commission pointed out that Complainant credibly testified to numerous unwelcome sexual advances and verbal and physical conduct by Kadyshes, Employer's salon manager. The Commission found that the record was full of statements and actions by Kadyshes of a sexual nature including sexual jokes, comments about Complain-

ant's breasts, telling Complainant that she would be good in bed, telling Complainant that he would personally perform an abortion if she became pregnant and calling Complainant a bitch on numerous occasions.

Based on the foregoing conduct, the Commission found that there was no question that Complainant was subjected to both verbal harassment of a sexual nature and sexual conduct which was sufficiently pervasive and severe as to alter the conditions of Complainant's work environment. Finally, the Commission found, based on the credible testimony of record, that: (1) the discrimination by Kadyshes detrimentally affected Complainant as it affected her physical well being; (2) the discrimination would detrimentally affect a reasonable person in the same position; and (3) it was undisputed that Kadyshes was Complainant's supervisor and that Employer took no action to resolve the situation despite Complainant complaining to Employer on several occasions.

On the other hand, the Commission rejected, as not credible, Kadyshes testimony that he never made any sexual propositions, remarks, displays, actions or touching directed at Complainant or any other employee. The Commission found that other testimony of record contradicted Kadyshes' testimony that he never made any sexual remarks or touched Complainant or anyone else. The Commission further found that Kadyshes' complete denial was not believable.

■ The record also supports the Commission's finding that Complainant was constructively discharged. "Constructive discharge occurs only when 'an employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Grande v. State Farm Mutual Automobile Insurance Co.,*

83 F.Supp.2d 559 (E.D.Pa.2000) (quoting *Goss v. Exxon Office Sys., Inc.*, 747 F.2d 885, 888 (3d Cir.1984)).

The Commission found that it was abundantly clear from the record that Complainant, from an objective and subjective points of view, determined that her working conditions were intolerable. The Commission accepted Complainant's testimony that she was forced to resign because of Kadyshes' treatment and that she saw no reason to believe that his behavior was going to change. Thus, the Commission found, from a subjective viewpoint, that Complainant reasonably perceived the working conditions to be intolerable and not likely to improve in the future. The Commission determined that Complainant had complained several times to Employer about the situation and no action was taken by Employer. The Commission found further that from an objective view point, Kadyshes' consistent pattern of verbal physical harassment of a sexual nature clearly would cause a reasonable person under such circumstances to resign. Finally, the Commission found that the fact that Complainant stayed does not preclude a finding that a reasonable person would be compelled to resign under the circumstances as Complainant was the sole source of income for her family and that she endured the treatment for as long as she could take it.

The fact that Employer believes that Complainant was not credible or that the evidence she submitted did not support the Commission's findings is of no moment. It is clear from the Commission's decision that it reviewed the entire record and considered all the evidence presented when making its decision. As stated previously herein, the Commission is charged with finding the facts, judging credibility and weighing the evidence and these matters are not within the scope of this Court's review in our appellate function. *Spanish Council of York.*

Accordingly, we conclude that the Commission did not abuse its discretion, that its decision is not against the weight of the evidence, and that its findings that Complainant worked in a hostile environment and was constructively discharged are supported by substantial evidence.

■ Next, Employer contends that the Commission should have refrained from allowing testimony related to circumstances which predated the time frame in which Complainant alleged the discrimination occurred. Employer states that Complainant alleged that she was discriminated against and harassed from December 1995 until her termination on April 24, 1997. However, Employer argues, the Commission erroneously permitted evidence to be introduced for events that allegedly occurred prior to 1995 and weighed this evidence into its decision. We disagree.

As correctly pointed out by the Commission, the United States Supreme Court has held that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile work environment takes place within the statutory time period. *National Railroad Passenger Corporation v. Abner Morgan, Jr.,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Thus, the Commission correctly considered the entire scope of Complainant's hostile work environment claim, including those acts of sexual harassment by Kadyshes that occurred prior to 1995. Moreover, it is clear from the Commission's decision and the record that there was substantial evidence to support the Commission's finding that Complainant was subject to a hostile work environment due to Kadyshes' conduct during the time

period of 1995 to 1997 when Kadyshes was Complainant's direct supervisor.

Next, Employer argues that the Commission wrongfully determined that Complainant attempted to mitigate her damages. Employer contends that Complainant failed to present any credible evidence that she attempted to mitigate her damages. Employer states that Complainant testified that there was nothing to prevent her from getting a job with another salon for an equal or more salary. Employer argues that Complainant's efforts to open her own salon were not reasonable—she had no business plan, marketing device, employees, or business structure—and she only searched for new employment with another salon for 6 weeks.

The question of mitigation of damages is a matter which lies within the sound discretion of the Commission. *Consolidated Rail Corporation v. Pennsylvania Human Relations Commission,* 136 Pa.Cmwlth. 147, 582 A.2d 702 (1990). Plaintiffs have a duty to mitigate damages. *Stultz v. Reese Brothers,* 835 A.2d 754 (Pa.Super.2003), *petition for allowance of appeal denied,* 577 Pa. 724, 847 A.2d 1288 (2004). The burden of mitigation imposed on a complainant is not onerous and does not require success. *Canteen Corporation v. Pennsylvania Human Relations Commission,* 814 A.2d 805 (Pa.Cmwlth.2003). All that is required is an honest, good faith effort. *Id.*

The burden of proving that a complainant failed to exercise reasonable diligence in seeking comparable or equivalent employment lies with the employer. *Stultz.* To meet this burden, the employer must demonstrate that substantially comparable work was available and the complainant failed to exercise reasonable due diligence in seeking alternative employment. *Id.* A self-employed person is "employed" for the purposes of mitigating damages if establishing a business of his or her own was a reasonable alternative to finding other comparable employment. *Carden v. Westinghouse Electric Corporation,* 850 F.2d 996 (3d Cir.1988).

Upon review of the record, we conclude that the Commission did not abuse its discretion when it found that Employer failed to demonstrate that Complainant did not exercise reasonable due diligence in seeking alternative employment. The Commission accepted Complainant's testimony that she chose to open her own salon rather than seek employment at another salon because she wanted to make a better move, not a backward move, given Employer's prestige, clientele, and pay scale. Employer failed to present any evidence showing actual jobs existed or that there were positions substantially equivalent to the position that Complainant previously held with Employer. As evidence of available comparable employment, Employer simply relies upon Complainant's own testimony that she could have secured another job at another salon. However, this reliance is insufficient to meet Employer's burden. Employer also failed to show that Complainant's decision to open her own salon was unreasonable. The record shows that Complainant began looking for comparable employment in January 1997 after she informed Employer that she would be resigning. The record also shows that once Complainant decided to open her own salon, she took immediate steps to do so and opened the salon shortly after her employment was terminated with Employer.

Accordingly, we conclude that the Commission did not abuse its discretion by finding that Complainant made a reasonable effort to mitigate her damages.

▆ Finally, Employer argues that the Commission's findings of fact are not supported by substantial evidence regarding Complainant's earnings. Employer contends that the Commission erroneously used Complainant's 1996 earnings to calculate damages and her back pay was never verified as to what she earned as an owner of her own salon. Employer argues further that the Commission's decision is arbitrary given the lack of evidence of earnings as well as Complainant's conflicting testimony as to damages.

The Third Circuit in *Carden* recognized that the question of how to value a discharged employee's self-employment as a mitigation of damages can be difficult. As pointed out by the court:

[T]he doctrine of mitigation of damages [ ] is to prevent the wage earner, ..., from obtaining a windfall, i.e. a double recovery. Such a double recovery would occur unless legitimate post-discharge earnings were offset against the back pay damages claimed. Where the post-discharge employment is evidenced by another salary, mitigation is readily determined. It is not so readily determined where the discharged employee establishes his own business....

In such a situation, a number of questions arise. They do so because of the nature of self-employment. For example: has the plaintiff drawn a salary which has reduced, if not eliminated the year-end profit? Have personal expenses, normally paid by a wage earner from a salary, been absorbed by the business, e.g., personal car expenses, insurance, vacations and other personal expenses? Have dividends been paid? Have profits been earned? Have particular expenses been appropriately offset against revenues? Have profits been reinvested in capital assets and have reserves been established? If so, how

should they be treated in a mitigation context. Has the plaintiff benefited by an increase in value of the business? While these questions do not exhaust the inquiry, they are but a few of the panoply of questions which must be answered when a plaintiff establishes his own business and asserts his self-employment as proper mitigation. Each of these questions necessarily must be resolved by the fact finder against a backdrop of the governing principles recited earlier: that the plaintiff should not receive double benefits, and that the burden is upon the defendant to prove by how much, if at all, the back pay award should be reduced. The aggregate economic gain found by the jury would then constitute the offset against the plaintiff's back pay damage award.

*Carden*, 850 F.2d at 1005–06.

With respect to damages, the Commission awarded Complainant back pay in the net amount of $156,421, which represented the total amount of back pay Complainant lost between April 25, 1997 through December 31, 2000 ($172, 221) less the 2002 book value of Complainant's business ($15,800). The Commission derived the total amount of back pay that Complainant lost for the foregoing time period from copies of Complainant's W–2s and her individual tax returns, which reflected the salary she drew from her business each year and the net profit or loss from her business for the years 1997 through 2001. The Commission derived the 2002 book value of Complainant's business from the testimony of Complainant's certified public accountant, who began preparing Complainant's individual and business tax returns in 2002.

There was no evidence presented as to the book value of Complainant's business for the years 1997 through 2001. More importantly, there was no evidence pre-

sented for any year as to the fair market value of the business. Thus, missing from the evidence presented and the findings made by the Commission is whether Complainant benefited from an increase in the fair market value of her business. As pointed out by the court in *Carden*, when valuing the self-employment of a discharged employee, this is an important question and it should have been considered by the Commission. The Commission merely relied on the individual tax returns and copies of Complainant's W-2s. However, the information contained in these documents is based on information supplied by and controlled by Complainant as the sole shareholder of her business. As the sole shareholder of the business, Complainant controls the amount that she draws as salary from the business.

Based on the tax returns for Complainant's business for the tax years 2002 and 2003, which were submitted into evidence during the hearing on damages, it is clear that Complainant is running a thriving enterprise.[2] For example, in 2002 and 2003, Complainant's business had gross receipts of $817,548 and $994,649, respectively. The Court is aware that Complainant's business may not have been as successful when she first started in 1997, but there is simply no record evidence which establishes the true value of the business or Complainant's true earnings with regard to that business. Merely relying on tax returns may be sufficient when trying to ascertain the earnings of a self employed individual if that individual is operating a small business in the sense that the income from the business is principally due to the services and attention of the owner. However, the 2002 and 2003 business tax returns show that Complainant's business

paid salaries and wages to the employees in the amount of $325,853 and 457,420, respectfully. Thus, it is clear that the success of Complainant's business is not due solely to her efforts but also the efforts of several employees.

In addition, the Commission also did not consider several of the other questions considered important by the court in *Carden* when valuing a discharged employee's self-employment. Therefore, this Court concludes that the Commission erroneously awarded Complainant, a self employed individual, back pay on the same basis it would have awarded a discharged employee who was not self-employed and receiving a set annual salary as reflected on that employee's pay stub or W-2. In other words, Complainant is not merely an employee of Aida, Inc.; she is a self employed individual who is the controlling sole shareholder/owner of business. Thus, the mitigation of her damages must be valued as such.

Accordingly, we reverse the Commission's award of back pay in this matter and remand for a new award based on the principles set forth by the court in *Carden*.[3] The Commission's order is affirmed in all other respects.

Judge SIMPSON concurs in the result only.

### ORDER

AND NOW, this 25th day of January, 2007, the order of the Pennsylvania Human Relations Commission in the above-captioned matter is REVERSED with respect to the award of back pay and RE-

---

2. We note that the business tax returns for the years 1997 through 2001 are not part of the record in this matter.

3. We note that Employer does not challenge the award of out-of-pocket expenses caused by the unlawful discriminatory conduct.

MANDED for a new damage award. The order is AFFIRMED in all other respects.

Jurisdiction relinquished.