**CONCERN PROFESSIONAL SERVICES, Petitioner**

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 20, 2009.

Decided May 28, 2009.

Reargument Denied July 27, 2009.

---

G. Thompson Bell, III, Reading, for petitioner.

William R. Fewell, Asst. Chief Counsel, Harrisburg, for respondent.

Ezekiel Wilson, intervenor, pro se.

BEFORE: LEADBETTER, President Judge,.and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY *Senior Judge* FLAHERTY.

Concern Professional Services (Concern) petitions for review of an order of the Pennsylvania Human Relations Commission (Commission) which adopted the opinion of the Hearing Panel, finding that Concern violated Section 5(a) of the Pennsylvania Human Relations Act (Act).[1] We vacate and remand.[2]

Concern is a non-profit child welfare organization licensed and regulated by the Pennsylvania Department of Public Welfare (DPW). Concern deals mainly in foster care and adoption but also provides services for adjudicated youth in a unit called the "CONCERN Treatment Unit for Boys" which was located at a facility in Westfield, Pennsylvania. Concern closed the Westfield facility in August of 2005.

Concern hired Wilson on May 10, 2000, as a supplemental counselor. Supplemental counselors did not work a regular shift schedule but worked as needed and as available. Supervisors at Westfield urged all counselors to attend regularly—scheduled staff meetings and required them to read the daily reports posted by Concern in two different places in the Westfield facility, both of which were accessible to supplemental counselors. The daily reports included information on job vacancies.

---

1. Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951–963. Section 5(a) of the Act provides in pertinent part that it shall be an unlawful discriminatory practice:

   (a) For any employer because of the race . . . to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or con-

   tract, if the individual . . . is the best able and most competent to perform the services required. . . .

   43 P.S. § 955(a).

2. We deny *pro-se* intervenor, Ezekiel V. Wilson's (Wilson) motion to strike Concern's reply brief but note that this court did not rely on anything in that brief in making its decision.

Memos from supervisors to staff asked employees who were interested in specific positions that were available to apply in writing for those positions. Concern also announced job vacancies at staff meetings and circulated memos and a newsletter that included job vacancy information. Concern required supplemental counselors who did not attend a staff meeting to read and sign the meetings' minutes, which included job vacancy information.

Wilson knew that the primary purpose of staff meetings was to disseminate information, including announcements of job vacancies, to employees. He was aware of full-time counselor vacancies that became available during his employment. Wilson's semi-annual employee evaluation for the period ending on May 10, 2001 pinpoints Wilson's primary goal for the following six-month period as "increase[d] participation in staff meetings, trainings, and supervision." Reproduced Record (R.R.) at 345a. His supervisor discussed this evaluation with Wilson, who was aware of this goal.

Wilson's subsequent semi-annual employee evaluation, for the period from May 10, 2001 until November 10, 2001, describes Wilson's "entrepreneurial adventure" that took away "a considerable amount of time for availability to work" for Concern. R.R. 333a, 149–150a. Wilson told his supervisor that he had become too busy to work more hours for Concern due to his new business venture, which included a fitness center and later an aerobic boxing program and a line of fitness clothing. Wilson started these business ventures prior to May 10, 2001 and starting in March of 2001, his hours worked for Concern dropped dramatically. During January–February 2001, Wilson worked an average of 19 hours per week for Concern. Starting in March of 2001, Wilson did not work any hours for as many as twelve weeks in a row for Concern.

Wilson signed both of his evaluations and Concern's policy permitted him to dispute their accuracy at that time, but he did not. Wilson discussed the content of his evaluations at the time with his supervisors. Also, Wilson was aware of Concern's formal grievance procedures but did not file a grievance over either of his evaluations or about any other issues, including any complaint of discrimination or unfair treatment.

On or about February 1, 2002, during Wilson's employment, two full-time counseling positions became available and were filled by white individuals. Wilson never applied either orally or in writing for either of these specific full-time counselor positions. Although he expressed interest from time to time in a full-time position, he never actually applied for the available positions. Concern believed that Wilson's other obligations prevented him from committing to a routine full-time counselor's schedule. On May 3, 2002, Wilson was discharged for being unavailable to work and unavailable for contact, such resulting in his failure to submit verification of medical eligibility as required by the DPW.

On July 23, 2002, Wilson filed a complaint with the Commission against Concern. The Commission approved the case for a public hearing before three Commissioners of a Hearing Panel which conducted hearings on January 24 and 25, and June 27, 2007. After the hearings but before a decision was issued two of the Commissioners left the Commission. The only Commissioner remaining authored the findings of fact, conclusions of law and opinion in this case. That one Commissioner from the Hearing Panel concluded in pertinent part as follows:

7. Wilson established a prima facie case of a failure to promote based on race by establishing:

a. that he is a member of a protected class;

b. that he was qualified for and sought a promotion to a full-time counselor position;

c. that he was not promoted;

d. that others who were similarly situated and not members of his protected class were promoted.

8. Concern met its burden of production by articulating that Wilson was not promoted because he did not apply for a full time position.

9. Wilson has established by a preponderance of the evidence that Concern's articulated reason for failing to promote Wilson to a position of full-time counselor was pretextual.

10. Wilson established a prima facie case of a race based discharge by establishing:

a. that he is a member of a protected class;

b. that he was qualified for the position;

c. that he was subjected to an adverse employment decision; and

d. that the adverse action occurred under circumstances which give rise to an inference of discrimination.

11. Concern met its burden of production by articulating legitimate nondiscriminatory reasons for terminating Wilson that included:

a. Unavailability;

b. Communication shortcomings; and

c. Failure to timely provide a health certificate.

12. Wilson established by a preponderance of the evidence that Concern's reasons are pretextual.

Hearing Panel Decision, Conclusions of Law Nos. 7–12, at 9–10.

The one Commissioner from the Hearing Panel ultimately determined that Wilson had proven his case and that Concern failed to establish a legitimate excuse for not promoting and ultimately terminating Wilson. The Commissioner found that Wilson credibly testified that he, throughout his employment, repeatedly told his supervisors that he desired to be promoted to a full-time counselor. Further, Andrew Hirak (Hirak), a case manager for Concern, testified that Concern did not require written applications for employment, but filled many positions following an oral request. Hirak further testified that Wilson repeatedly spoke to him about his desire to be promoted. Thus, Wilson was qualified and did seek a full time position.

The Commissioner further determined that Concern's reasons for not promoting Wilson, that Wilson had never formally applied for a position, was pretextual, as Hirak had testified that a formal application had not been required by Concern. The Commissioner further found that Wilson had been discriminated against, in violation of Section 5(a) of the Act.

Next, the Commissioner determined that Wilson had proven his case for an unlawful discharge in violation of Section 5(a) of the Act. The Commissioner determined that Concern's reasons for discharging Wilson, that he was unavailable for work, that he failed to communicate with his supervisors and that he failed to timely provide a health certificate, were pretextual as well. The Commissioner relied upon Hirak's testimony to support Wilson's position that he was available for work. Hirak testified that Wilson was available 90–100% of the time. Other counselors who scheduled supplemental counselors gave praise to Wilson, regarding his availability. Further, the Commissioner noted that Wilson frequently volunteered time at Concern, coming into work when he was not scheduled, both during his employment and after he was terminated. The Com-

missioner found that Wilson was available to work.

The Commissioner further found that Wilson did communicate with his supervisors. Wilson's wife testified that she called Concern bi-monthly to inquire about the shifts Concern made available to her husband. She further testified that she normally answered the phone in the house and always returned calls right away upon finding a message on the answering machine. Wilson testified that he furnished Concern with phone numbers at home and at his gym so that he would be reachable by Concern. Wilson also testified that Byron Lee, Concern's Group Home Director, would stop in at the gym sometimes, if he needed to talk to him.

With regard to Wilson's failure to provide a health certificate, the Commissioner further found that Wilson clearly notified Concern that he was unaware of the need for the medical form. Additionally, once notified, Wilson indicated his willingness to complete the form as soon as possible.

The Hearing Panel, while noting that it is the recommendation of the only remaining Hearing Panel Commissioner, determined that Wilson had proven discrimination in violation of Section 5(a) of the Act and recommended that the attached findings of fact, conclusions of law and opinion be approved and adopted.

On July 22, 2008, the Commission issued its final order approving the findings of fact, conclusions of law and opinion of Commissioner, Reverend James Earl Garmon, Sr. (Garmon), the sole hearing Commissioner remaining on the Hearing Panel. The Commission ordered Concern to cease and desist from discriminating against individuals because of their race in regard to promotions and terminations from employment, to pay Wilson the lump sum of $73,968.00 within 30 days of the effective date of the order for back pay for the period of January 27, 2002 through August 2005, to pay interest of six percent per annum on the back pay, and report to the Commission regarding its compliance with the terms of the order.

■ On August 15, 2008, Concern timely filed a petition for review before our court. Our review of a Commission order is limited to whether constitutional rights were violated, errors of law committed or whether the findings are supported by substantial evidence. *Raya and Haig Hair Salon v. Pennsylvania Human Relations Commission,* 915 A.2d 728, 732 (Pa. Cmwlth.2007).

Concern contends that the Commission committed an error of law by approving the findings of fact, and conclusions of law, and opinion of only one Commissioner, not three Commissioners as required by the Act, by finding that Wilson established a prima facie case of failure to promote because of Wilson's race when it is undisputed that Wilson never applied for either of the two positions at issue and there is no evidence that Concern promoted a similarly-situated person outside the protected class to a position for which Wilson applied, by finding that Concern's articulated reason for discharging Wilson was pretextual and that Concern discharged Wilson because he failed to timely provide a health certificate when the record shows that Concern discharged Wilson because he was unavailable for work and uncommunicative with his supervisors, and by finding that Wilson satisfied his burden of proof in establishing damages when he failed to produce documentary evidence of interim earnings.

First, Concern contends that the Commission erred in approving the findings of fact, conclusions of law and opinion of only one Commissioner, as the Hearing Panel was not composed of three Commissioners, as required by Section 9 of the Act. Sec-

tion 9 of the Act provides in pertinent part as follows:

> (g) The Commission shall establish rules of practice to govern, expedite and effectuate the foregoing procedure and its own actions thereunder. **Three or more members of the Commission** or a permanent hearing examiner designated by the Commission **shall constitute the Commission** for any hearing required to be held by the Commission under this act. The recommended **findings, conclusions and order made by said members** ... shall be reviewed and approved or reversed by the Commission before such order may be served upon the parties to the complaint. The recommended findings, conclusions and order made by said members ... shall become a part of the permanent record of the proceeding and shall accompany any order served upon the parties to the complaint. (Emphasis added).

43 P.S. § 959(g).

■ In the present controversy, Wilson's complaint was heard by a three member panel comprised of Commissioners. However, the findings of fact, conclusions of law and opinion were only authored and signed by one of the Commissioners, Commissioner Garmon, as the other two Commissioners were no longer with the Commission. The recommendation of the Hearing Panel refers to Commissioner Garmon as "the only remaining Hearing Panel Member." The Commission notes that the regulations permit the parties to waive the three-Commissioner requirement, however, neither party waived the requirement in this case and it was heard by three Commissioners.[3]

Accordingly, as the Hearing Panel recommendation was authored and signed by only one Commissioner, in violation of Section 9 of the Act, we must vacate the decision of the Commission and remand for a new hearing and decision before a full panel.[4]

### ORDER

AND NOW, this 28th day of May, 2009, Ezekiel Wilson's motion to strike Concern Professional Services' reply brief is denied and the order of the Pennsylvania Human Relations Commission in the above-captioned matter is vacated and the matter is remanded to the Commission for a new hearing and decision before three members of the Commission.

Jurisdiction relinquished.

---

**3.** We need not address Concerns' remaining issues, as we vacate the Commission's order based upon the violation of Section 9 of the Act.

**4.** We note that in addition to a hearing and decision by three or more members of the Commission, a hearing and decision may also be provided by a permanent hearing examiner.